IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

**ADRIANNA NICOLE RICKS,**

        **Plaintiff,**

v.

**HIRERIGHT, LLC**
**Serve:** c/o LegalInc Corporate Services Inc.
440 Monticello Ave, Suite 1800
Norfolk, VA 23510 – 2670

        **Defendant.**

Civil Action No.: 4:24-cv-00034

**JURY TRIAL DEMANDED**

## COMPLAINT

Adrianna Nicole Ricks ("Plaintiff") by and through her counsel brings the following Complaint against HireRight, LLC ("Defendant") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff as a convicted felon and attributed to Plaintiff a false misdemeanor charge and conviction.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of a felony for ***"indecent act w/child custodian."*** Defendant further reported that

1

Plaintiff was convicted of a misdemeanor for "Possession of Marijuana" under the case number GC15003411-00.

4. Defendant's reporting is grossly inaccurate and untrue.

5. Plaintiff has never been charged with or convicted of a felony in her life, much less a child sexual exploitation-related crime.

6. Case number GC15003411-00 does not belong to Plaintiff.

7. Plaintiff's prospective employer delayed Plaintiff's start date by over nearly two months after receiving an employment background check report from Defendant, which included the inaccurate and outrageous felony and misdemeanor conviction, which do not belong to Plaintiff.

8. Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available public court records from the City of Newport News, Virginia regarding the felony and misdemeanor convictions prior to publishing Plaintiff's report to her prospective employer.

9. Had Defendant performed even a cursory review of the widely available court records, it would have discovered that the criminal records belong to a different consumer who is wholly distinguishable from Plaintiff by their first name, middle name, gender, and social security number

10. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

11. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

12. Defendant's inaccurate report cost Plaintiff two-months worth of pay and health benefits for her and her son. good paying job and job security.

13. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of injuries resulting in actual damages including, without limitation, delay in starting employment, near loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

14. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

15. Adrianna Nicole Ricks ("Plaintiff") is a natural person residing in Newport News, Virginia and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16. Defendant HireRight, LLC ("Defendant") is a Delaware corporation doing business throughout the United States, including the Commonwealth of Virginia and in this District, and has a principal place of business located at 100 Centerview Drive, Suite 300, Nashville, Tennessee 37214. HireRight can be served through its registered agent in Virginia, LegalInc Corporate Services Inc., located at 440 Monticello Ave, Suite 1800, Norfolk, VA, 23510 – 2670.

17. Among other things, Defendant sells consumer reports to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such

as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

18. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

21. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

22. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

23. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

24. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

25. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment purposed consumer reports, also known as background check or background screening reports, like the one Defendant prepared in Plaintiff's name.

26. The FCRA provides a number of protections for job applicants who are the subject of consumer reports for purposes of securing employment, housing, and other purposes.

27. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

28. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

29. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

30. Defendant disregarded its duties under the FCRA with respect to Plaintiff's consumer report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

31. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

32. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

33. The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

34. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the widely available court records are rarely directly reviewed in creating criminal background checks.

35. Consumer reporting agencies that perform background checks, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

36. Given that Defendant is in the business of selling employment purposed consumer reports, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

---

[1] CFPB, *Market Snapshot: Background Screening Reports* (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

37. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

38. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

39. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

40. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting misdemeanor and felony convictions that belong to a separate consumer who has a different first name, middle name, gender, and social security number than Plaintiff.

41. Defendant claims that it is accredited by and is a member of the Professional Background Screening Association ("PBSA"), and even has its executives serving on PBSA leadership committees.

42. In fact, the chair-elect of PBSA's US Council is a HireRight employee.

43. PBSA publishes numerous resources for its members to comply with the Fair Credit Reporting Act and also hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws. PBSA also offers other education through numerous online opportunities, of which HireRight is well aware.

## FACTS

### Plaintiff Applies for a Job with Elevance Health

44. In or around July 2023, Plaintiff applied for full-time employment with Elevance Health.

45. Upon applying to Elevance Health, Plaintiff successfully completed an interview on August 22, 2023.

46. On November 1, 2023, Elevance Health extended a job offer to Plaintiff for the position to which she applied. The job offer was conditioned upon Plaintiff passing a background check ("consumer report.")

47. Plaintiff was to be paid $19.25 per hour along with a $500.00 sign on bonus. The job also provided health benefits eligible on the first of the month following Plaintiff's start date, and the ability to earn Paid Time Off. Plaintiff's scheduled start date was November 27, 2023. Plaintiff would therefore be eligible for health benefits just four days later, on December 1, 2023.

**Defendant Took an Unreasonable Amount of Time to Publish a Consumer Report to Elevance Health**

48. Elevance Health contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

49. On November 1, 2023, Elevance Health ordered a criminal background check on Plaintiff from Defendant.

50. On November 21, 2023, Plaintiff received an email from Elevance Health stating that since her background check was still in progress, her start date may need to be rescheduled later.

51. On November 22, 2023, Plaintiff received another email from Elevance Health confirming that her start date needed to be rescheduled because her background check was not completed. That same day Plaintiff received an updated employment offer letter which rescheduled the start. All other terms of the start letter were the same.

52. On December 1, 2023, Plaintiff received another email from Elevance Health indicating her start date was to be pushed out for a *second time*, to December 11, 2023, because the background check had not yet been completed.

**Defendant Published an Inaccurate Consumer Report to Elevance Health**

53. On or about December 5, 2023, *over a month after the report was ordered*, Defendant completed its consumer report about Plaintiff and sold the same to Elevance Health.

54. Defendant advertises that "In the U.S., criminal searches are usually completed in one to two business days . . ."[3]

55. Yet, here, Defendant took *thirty-four* days to complete the consumer report.

56. To make matters worse and despite already delaying Plaintiff's start date, pay, and benefits due to the untimeliness of its report, within that consumer report, Defendant published inaccurate information about Plaintiff.

57. Specifically, Defendant's consumer report about Plaintiff included two grossly inaccurate and stigmatizing misdemeanor and felony convictions from the Newport News, Virginia which appeared in the consumer report as follows:

---

[3] https://www.hireright.com/blog/how-long-does-an-employee-background-check-take

**1.) Case Nbr.:** CR22001003-01
**Comments:** Newport News Circuit Court
**Identifiers:** Confirmation: Name, Date Of Birth, Partial Address. Name on file: Ricks, Adrian Joseph

#: WD-110123-G44UX, Completed: Dec 5, 2023 12:19 PM EST

| | | | |
|---|---|---|---|
| **Count:** | 1 | **Severity:** | Felony (or equivalent) - Class 6 felony |
| **Offense Date:** | May 10, 2021 | **Disp. Date:** | Apr 28, 2023 |
| **Offense:** | Indecent Act With /Child Custodian | | |
| **File Date:** | Sep 7, 2022 | | |
| **Disposition:** | Guilty | | |

**Sentence:** Jail/Prison time imposed: 5 years, of which 3 years is suspended.
Probation time imposed: 5 years.
Probation type: supervised

**2.) Case Nbr.:** GC15003411-00
**Comments:** Newport News-Criminal General District Court
**Identifiers:** Confirmation: Name, Date Of Birth, Partial Address. Name on file: Ricks, Adrian J. Full Name on record confirmed to belong to the candidate.

| | | | |
|---|---|---|---|
| **Count:** | 1 | **Severity:** | Misdemeanor (or equivalent) - Classification not recorded |
| **Offense Date:** | May 18, 2015 | **Disp. Date:** | Jun 10, 2015 |
| **Offense:** | Simple Possession Of Marijuana | | |
| **File Date:** | May 22, 2015 | | |
| **Disposition:** | Guilty | | |

**Sentence:** Fines, court costs, restitution, fees, and other assessments: Fine: $250.00 and Costs: $176.00. Fully paid.
Operator license suspension time: 6 month(s) restriction effective date: 06/10/2015 restriction end date: 12/10/2015 operator license restrictions: license is restricted to use to and from work, license is restricted to use during working hours, license is restricted to use for medically necessary travel, to and from court ordered facility, travel to and from a place of religious worship

58. The *felony* conviction for *indecent act w/child custodian* reported by Defendant about Plaintiff to Elevance Health *does not belong* to Plaintiff.

59. Plaintiff has never been charged with or convicted of a felony in her life much less a felony for *indecent act w/child custodian*.

60. Case number GC15003411-00 that Defendant reported about Plaintiff to Elevance Health *does not* belong to Plaintiff.

61. In the consumer report, Defendant includes a paragraph that disclaims the accuracy of the information it reports and falsely states that the information is exactly what they got from the public records, which is demonstrably untrue. The paragraph appears in the consumer report as follows:

> "This report does not guarantee the accuracy or truthfulness of the information as to the subject of the investigation, but only that it was accurately copied from public records. Information generated as a result of identity theft, including evidence of criminal activity, may be inaccurately associated with the consumer who is the subject of the report."

62. A cursory review of the widely-available court records confirms that the records belong to a separate consumer, Adrian Joseph Ricks, Plaintiff's twin brother ("Convicted Felon Ricks").

63. Had Defendant actually consulted or obtained the widely-available public court records from Newport News, Virginia regarding the two convictions, it would have seen obvious discrepancies between Convicted Felon Ricks and Plaintiff.

64. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Ricks include the following:

    (a) Plaintiff's legal name is "Adrianna Nicole Ricks," and the criminal records belong to a "Adrian Joseph Ricks," which is both clearly indicated on the

11

                face of the consumer report and in the widely-available public records from Newport News, Virginia;

(b)    Plaintiff's gender, which was provided to Defendant prior to publishing the subject consumer report, is different than that of Convicted Felon Ricks', as Plaintiff is a female and Convicted Felon Ricks is a male; and;

(c)    Plaintiff's social security number, which was provided to Defendant is contained on the face of the subject consumer report, is different than that of Convicted Felon Ricks'.

65.    The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective employer.

66.    Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal convictions belong to an unrelated individual with a different first and middle name than Plaintiff, a different gender, and a different social security number than Plaintiff.

67.    In fact, Defendant did not even follow its own purported standard in preparing the consumer report it sold about Plaintiff to Plaintiff's prospective employer.

68.    According to its own website, "[Defendant] requires an applicant's first name, middle name or initial, last name, date of birth, and addresses to perform a Criminal Felony & Misdemeanor Search".[4]

---

[4] https://www.hireright.com/services/county-criminal-felony-and-misdemeanor

69. Here, Defendant couldn't be bothered to address the fact that it the record of someone with a different first and middle name than Plaintiff.

70. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Elevance Health Threatens to Rescind Plaintiff's Job Application**

71. On December 6, 2023, Plaintiff was notified by Elevance Health, through a pre-adverse action notice, that there was a discrepancy in her criminal history that may result in Elevance rescinding her employment offer. Included with the pre-adverse action notice was a copy of her consumer report.

72. Upon review of the subject consumer report, Plaintiff was humiliated and angered in realizing that the serious criminal convictions of another, namely Convicted Felon Ricks, were published in the consumer report Defendant sold about Plaintiff to Elevance Health.

73. Plaintiff contacted Elevance Health and informed them that she is not Convicted Felon Ricks, that she has a different first and middle name, is a different gender, and that she has a different social security number from that of Convicted Felon Ricks.  Plaintiff explained that the serious criminal convictions of Convicted Felon Ricks do not belong to her.

74. Plaintiff also informed her prospective employer that she would be disputing the inaccurate reporting with Defendant.

75. That same day, Plaintiff received an updated offer later, pushing her start date back to January 29, 2024.  Upon information and belief, her start date was pushed out again to allow time for her dispute to process.

76. Plaintiff was very panicked, confused, and concerned about the impact of Convicted Felon Ricks' serious criminal convictions reported on the subject consumer report – specifically, the impact of the same on her future.

77. Specifically, Defendant matched Plaintiff and Convicted Felon Ricks and published the criminal records of Convicted Felon Ricks onto the consumer report about Plaintiff and sold that report to Plaintiff's prospective employer. This exculpatory public record information was widely available to Defendants prior to publishing Plaintiff's consumer report to Elevance Health, but Defendant failed to perform even a cursory review of such information.

### Plaintiff Disputed the Misinformation in Defendant's Consumer Report

78. On December 6, 2023, desperate to secure employment with Elevance Health and riddled with worry over the far-reaching impacts of being confused with a convicted ***felon*** and being ascribed a misdemeanor which does not belong to her, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via telephone with Defendant.

79. Plaintiff identified herself and provided information to Defendant to support her dispute.

80. Plaintiff specifically disputed the criminal records of Convicted Felon Ricks.

81. Plaintiff specifically stated that the criminal records of Convicted Felon Ricks do not belong to Plaintiff.

82. Plaintiff specifically asked Defendant to investigate and delete Convicted Felon Ricks' criminal records from any consumer report about Plaintiff.

83. Shortly after the dispute call. in or around December 2023, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and removed

the criminal records from the subject consumer report. Defendant had also issued a corrected consumer report to Elevance Health.

84. Defendant's false report almost cost Plaintiff a promising, well-paying job with Elevance Health.

85. Plaintiff, a mother, experienced profound humiliation and anger as a result of being unjustly branded as both a ***convicted felon*** and a ***pedophile***. Plaintiff also lost out on two months' worth of work due to Defendant's inaccurate reporting. Plaintiff's ability to receive health benefits for her and her infant son were also delayed by two months. Plaintiff would have started receiving health benefits on December 1, 2023, but instead did not begin receiving benefits until February 1, 2024.

86. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

87. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, temporary loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her consumer report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

88. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

89. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

90. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

91. At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

92. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

93. The consumer reports Defendants provided Plaintiff's prospective employers included grossly inaccurate and materially misleading criminal records that conflicted with the information widely available in the public records.

94. The consumer information Defendants transmitted to Plaintiff's prospective employers was based on public records information that it knew was not complete and the accuracy of which was expressly disclaimed by Virginia's electronic records system and the Office of the

95. Executive Secretary of the Supreme Court of Virginia. The Virginia electronic records system and the Office of the Executive Secretary of the Supreme Court of Virginia have disclaimers of accuracy in their contracts with third party vendors and on the website that the only

source of information that can be relied on is the actual court records from the Court Clerk in the originating jurisdiction.

96. Upon information and belief, the contracts that the Executive Secretary of the Supreme Court of Virginia has with Defendant and all entities that collect Virginia public records contains a similar disclaimer and admonishes recipients that only the original court has the accurate public records.

97. Had Defendants reviewed the actual court records, Defendants would have seen that Plaintiff was ***not*** a ***convicted felon***, and that Case number GC15003411-00 ***does not*** belong to Plaintiff.

98. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of injuries resulting in actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct her background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

99. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

100. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Respectfully,

**ADRIANNA NICOLE RICKS**

/s/ *Susan M. Rotkis*
Susan M. Rotkis, VSB 40693
**CONSUMER ATTORNEYS**
2290 East Speedway Blvd.
Tucson, AZ 85719
T: (602) 807-1504
Fax: 718-715-1750
E: srotkis@consumerattorneys.com

*Attorneys for Plaintiff*
*Adrianna Nicole Ricks*